UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| ROBERT W. MAHER, JR.,  )<br> )<br>    Plaintiff,  )<br> )<br>VS.  )<br> )<br>STATE OF TENNESSEE, et. al.,  )<br> )<br>    Defendants.  ) | No. 16-1314-JDT-cgc |

ORDER PARTIALLY DISMISSING THE COMPLAINT
AND DIRECTING THAT PROCESS BE ISSUED AND SERVED
ON THE REMAINING DEFENDANTS

On December 7, 2016, Plaintiff Robert W. Maher, Jr. (Maher), who is incarcerated at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued December 8, 2016, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as the State of Tennessee, Dr. Bernhard Dietz, HCCF Health Services Administrator John Borden, HCCF Warden Grady Perry, and CoreCivic.

I. The Complaint

Maher alleges that he has needed surgery on his left leg, ankle, right arm, and shoulder since he arrived at HCCF on March 25, 2016, where he has been treated by Defendant Dietz beginning on April 8, 2016. (ECF No. 1 at PageID 3; *see also* ECF Nos. 5 & 6 (Grievances).)

Maher contends that he has very little movement in his right shoulder and arm. (ECF No. 1 at PageID 3.) He states that he is restricted to no lifting, no climbing up and down steps, and no activities with his right arm and shoulder. (*Id.*) Maher alleges the Defendant Dietz told him that his injuries will not be repaired unless they are life threatening even though Maher is using a cane, can only walk on flat surfaces, cannot do any exercises, and is designated as Class C medical, which Maher alleges is the "worst you can be. . . ." (*Id.* at PageID 4.) Maher has written ten grievances, but he alleges he has received no help from the State of Tennessee, HCCF, or Defendants Borden, Dietz and Perry. (*Id.* at PageID 5.)

Maher alleges that he has seen several nurses over seven months, but they have told him they cannot do more without Defendant Dietz taking action. (*Id.* at PageID 7.) He contends that he is now seeing Dr. Kirk, who is not a party to this complaint, about his mental health because the lack of medical treatment is leaving him physically and mentally drained. (*Id.*)

Maher alleges the deliberate indifference to his injuries is a violation of his Eighth Amendment rights and the Americans with Disabilities Act (ADA) because he was on 100% disability for the previous ten years. (*Id.* at PageID 8.)

Maher contends that he was told by his orthopedic specialist, Dr. Ramashad, that he needed surgeries to repair the injuries; however, Defendant Dietz stated that Maher did not need the surgeries at that time. (*Id.* at PageID 9.) Maher argues that Dietz, a general practitioner, is not qualified to make that determination; has only provided Maher with a brace to ease the pain and discomfort; and will not agree to the surgeries because the injuries did not occur at the HCCF. (*Id.*) Maher was given a cane because of damage to his knee and ankle and a brace for his arm; however, he contends the cane and brace were merely temporary fixes. (*Id.* at PageID 10.) Mather alleges he also was promised an ankle brace; however, Defendant Dietz has told him that

the cane would suffice. (ECF Nos. 16 & 21.) Maher contends that if surgery was done to remove shrapnel he could walk normally without the use of a cane. (*Id.* at PageID 11.) Maher also contends that he has carpal tunnel syndrome and a torn rotator cuff in his right arm and shoulder that need to be repaired in order for him to have 100% use of the arm. (*Id.* at PageID 11-12.)

Maher seeks money damages for pain and suffering and for the Court to order the Defendants to provide him with the surgeries that he needs. (*Id.* at 13.)

Since the filing of the complaint, Maher has filed numerous letters and motions continuing to assert that Defendants Dietz and Borden adamantly refuse to provide him with necessary medical care. He states that he met with both Dietz and Borden to discuss his medical problems and that both are well aware that his condition continues to deteriorate and his pain continues to worsen. (ECF Nos. 12, 16 & 21.) Notwithstanding that knowledge, they still have indicated to him they have no intention of sending him for the surgeries he seeks. Several of the motions and letters include additional exhibits such as medical records, sick call requests, and grievance documents. To the extent these various motions and letters seek to add allegations and attached exhibits, they are GRANTED.

In one of Maher's motions, he asks the Court to simply order that he undergo the surgeries he seeks. (ECF No. 22.) That motion is DENIED, as it has not yet been determined that he is entitled to any relief in this case. In addition, several of Maher's motions ask for copies of all documents sent by the Court to the Defendants or for copies of any evidence the Defendants have provided. However, no Defendant has yet been served; therefore, the Court has sent no documents to the Defendants and the Defendants have submitted no evidence. Maher also asks for the Court to send him copies of his medical records. However, the only medical

records that have been filed with the Court are those few that Maher himself already submitted. Any other medical records Maher needs must be sought from the Defendants themselves through discovery, after they have been served with process and have responded to the complaint. Accordingly, all of the motions asking that Maher be provided with various types of documents are DENIED.

In three of Maher's motions, he states that he seeks relief under Federal Rule of Civil Procedure 60(b). (ECF Nos. 29, 31 & 40.) However, Rule 60(b) governs motions for relief from an order of the Court or a judgment of the Court. No judgment has been entered in this case and there were no orders ruling on any substantive issues when Maher filed his motions. Therefore, those motions are also DENIED.

## II. Analysis

A.   Screening and Standard

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>   (1)   is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>   (2)   seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the]

complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*,

891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  § 1983 Claim

Maher filed his complaint pursuant to 42 U.S.C. § 1983 and the ADA. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the

District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Although Maher purports to sue under the ADA in addition to §1983, he does not specify whether he sues under Title II of the ADA, Title III of the ADA, or both. Title III of the ADA, 42 U.S.C. §§ 12181-12189, prohibits disability discrimination by certain privately owned or operated places of public accommodation.[1] However, prisons such as the HCCF which are operated by private companies are not among those private entities that are considered a "public accommodation." *See id.*, § 12181(7); *see also Tester v. Hurm*, No. 09-318-JBC, 2011 WL 6056407, at *3 (E.D. Ky. Dec. 5, 2011).

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*, § 12132. Title II of the ADA applies to prisoners housed in state prisons. *Pennsylvania v. Yeskey*, 524 U.S. 206, 213 (1998). However, even though CoreCivic (formerly Corrections Corporation of America (CCA)) may have "contracted with [the State of Tennessee] to provide governmental prison services, that does not convert CCA into a 'public entity' for purposes of Title II." *Tester*, 2011 WL 6056407, at *3 (citing *Edison v.*

---

[1] Title III provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

*Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010)); *see also Miracle v. Smith*, No. 3:16-CV-P346-JHM, 2016 WL 5867825, at *3 (W.D. Ky. Oct. 6, 2016) (private company contracted to provide medical care to inmates at a state prison not a "public entity" under Title II).

Even if HCCF were considered a public entity, a claim about substandard medical care ordinarily is not actionable under Title II of the ADA. *See, e.g., Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ("Brown's complaint merely asserts that defendants violated the ADA and fails to allege any facts that demonstrate that the alleged inadequate or improper medical care he received was because of a disability."); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam) (challenge to medical treatment decisions not actionable under ADA); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("purely medical decisions . . . do not ordinarily fall within the scope of the ADA"); *Spencer v. Easter*, 109 F. App'x 571, 573 (4th Cir. 2004) (per curiam) (claim of inadequate medical care not actionable under the ADA absent evidence of discriminatory intent arising from prisoner's disability); *Baldridge-El v. Gundy*, No. 99-2398, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) (ADA does not provide a cause of action for medical malpractice); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its prisoners"). Therefore, Maher has no valid claim under the ADA.

Maher also has no valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483

U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code. Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

The complaint also does not state a claim against CoreCivic. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CoreCivic, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.*

9

The complaint does not allege that Maher suffered any injury because of an unconstitutional policy or custom of CoreCivic.

Maher has no cause of action against Defendant Perry for failing to investigate or take remedial measures in response to his complaints. A failure to take corrective action in response to a grievance or complaint also does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). In addition, the Sixth Circuit has affirmed the dismissal of a claim of supervisory liability based on the "failure to investigate," stating:

> Young's claim against defendants McAninch and Goff is based solely on their alleged failure to investigate defendant Ward's behavior towards Young. Although Young stated that defendants McAninch and Goff had knowledge of his allegations against defendant Ward, this is insufficient to meet the standard that they either condoned, encouraged or knowingly acquiesced in the misconduct.

*Young v. Ward*, No. 97-3043, 1998 WL 384564, at *1 (6th Cir. June 18, 1998).

The main focus of Maher's complaint is the alleged failure to allow him to undergo surgeries for his arm and leg injuries. "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013) (same). "Although the right to adequate medical care does not encompass the right to be diagnosed

correctly, [the Sixth Circuit] has long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Johnson*, 398 F.3d at 874 (internal quotation marks and citation omitted).

The objective component of an Eighth Amendment claim requires that a prisoner have a serious medical need. *Blackmore*, 390 F.3d at 895; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); *see also Santiago,* 734 F.3d at 590 (same); *Johnson*, 398 F.3d at 874 (same). Plaintiff alleges that he suffers severe pain in his arm and leg and has been diagnosed by an orthopedist as needing treatment. Thus, Plaintiff has sufficiently alleged an objectively serious medical condition.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he or she had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows*

> *of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

"'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. "When a doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*; *see also Johnson*, 398 F.3d at 875 (same). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 836).

In this case, the Court finds that Maher has stated plausible Eighth Amendment claims for lack of adequate medical care against Defendants Dietz and Borden in their individual capacities. Process will be issued on those claims.

In conclusion, except for his Eighth Amendment claims against Defendants Dietz and Borden, all of Maher's claims are DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

It is ORDERED that the Clerk shall issue process for Defendants Dr. Bernard Dietz and HCCF Health Services Administrator John Borden and deliver that process to the U.S. Marshal for service. Service shall be made on the Defendants pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rule of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall be advanced by the United States.

It is further ORDERED that Maher shall serve a copy of every subsequent document he files in this cause on the attorneys for the Defendants or on any unrepresented Defendant. Plaintiff shall make a certificate of service on every document filed. Plaintiff shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[2]

Plaintiff shall promptly notify the Clerk, in writing, of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[2] A free copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.