# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| ROBERT W. MAHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 16-1314-JDT-cgc |
| | ) | |
| STATE OF TENNESSEE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING PLAINTIFF'S PENDING MOTIONS, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, CERTIFYING AN APPEAL BY PLAINTIFF IS NOT TAKEN IN GOOD FAITH AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

Plaintiff Robert W. Maher, a prisoner acting *pro se*, filed this action pursuant to 42 U.S.C. § 1983. Maher alleges he received inadequate medical treatment, in violation of his constitutional rights, during his prior incarceration at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee. The Court dismissed portions of the complaint *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and directed that process be issued for Defendants John Borden, HCCF Health Services Administrator (HSA), and Dr. Bernhard Dietz, M.D., a physician at the HCCF. (ECF No. 47.) Before the Court is Defendants' motion for summary judgment. (ECF No. 94.) However, the Court will first address several pending motions, letters and other documents filed by Maher. Defendants have responded in opposition to many of Maher's motions.

### Maher's Pending Motions

Two of the pending documents filed by Maher are accompanied by copies of what he states are portions of his medical records. Maher filed a motion on April 12, 2019, seeking to submit copies of some of his medical bills as evidence. (ECF No. 130.)[1] Maher also filed a document on October 7, 2019, consisting of what appears to be a copy of his letter to a medical providers office requesting records and fourteen pages of medical records from that provider. (ECF No. 145.) However, as the Court stated in a prior order denying a similar motion by Maher, none of the medical records submitted with these documents are authenticated to verify they are true and accurate copies. Therefore, they may not be considered as evidence, and Maher's motions to include them as such are DENIED.

On September 9, 2019, Maher filed a motion to continue the trial of this case. (ECF No. 132.) That motion is DENIED as unnecessary because the case was not reset for trial.

On September 16, 2019, September 25, 2019, September 26, 2019, and January 8, 2020, Maher filed motions to submit evidence consisting only of his own unsupported and unverified statements concerning his medical conditions and treatment. (ECF Nos. 133, 137, 139 & 157.) Such statements are not evidence, and Maher's motions to include them are DENIED.

Maher filed a motion on September 25, 2019, in which he seeks to submit additional interrogatories to the Defendants. (ECF No. 136.) In response to the motion, Defendants state they have answered four prior sets of discovery requests from Maher. (*See* ECF No. 140 at PageID 1219.) Though Maher filed a motion to compel more complete responses in July 2018, that motion

---

[1] The motion also again asks the Court to require the Defendants to pay his insurance co-pays and deductibles. (*Id.* at PageID 1176.) It has not been determined that Maher is entitled to any relief, so the request for payment of his medical costs is therefore inappropriate.

was denied by the Court.  (*See* ECF No. 129 at PageID 1172-73.)  The deadline for completing all discovery was October 12, 2018.  (*See* ECF No. 61 at PageID 374.)  Maher has had ample opportunity to submit his interrogatories and other discovery requests.  The motion for further discovery therefore is untimely and is DENIED.

Also on September 25, 2019, Maher filed a motion asking the Court to "show" that both Defendants took an oath to help those in need of medical attention and that both "grossly failed" in their duty to do so in his case.  (ECF No. 138.)  Assuming that Maher is asking for a declaration that the Defendants failed to provide him with adequate medical care, the motion is DENIED.

Maher filed two documents on October 4, 2019, concerning Nurse Foster.  (ECF Nos. 142 & 143.)  He states that Foster is a potential witness in this matter.  Maher asks the Court to either subpoena Foster to submit a statement about the medical treatment he received from the Defendants or compel her to answer the interrogatories he has sent to her.  The Court has already ruled on several similar motions that Maher filed previously.  For the reasons stated in the March 25, 2019, order, (*see* ECF No. 129 at PageID 1170-72), these requests are DENIED.

In two motions filed on October 9, 2019, and November 12, 2019, (ECF Nos. 146 & 151), Maher seeks to add medical records into evidence, but the records to which he refers are not actually attached.  Those motions are DENIED.  Maher also filed a document on December 2, 2019, in which he offered to undergo a medical examination and tests performed by a doctor of the Defendants' choosing.  (ECF No. 154.)  Defendants have sought no independent medical examination, and the Court does not believe it would be helpful in this case.  That motion is DENIED as well.  In another motion filed December 19, 2019, (ECF No. 155), Maher seeks to add evidence that there are four doctors who have diagnosed his injuries allegedly resulting from

3

inadequate medical care at the HCCF. However, no other documents are attached; therefore, the motion is DENIED.

In two additional documents filed on October 15, 2019, (ECF No. 148), and December 2, 2019, (ECF No. 153), Maher seeks to subpoena his medical records, both from outside his medical providers and those within the prison system. While a litigant generally is entitled to a subpoena upon request, *see* Fed. R. Civ. P. 45(a)(3), this request is untimely. Defendants' motion for summary judgment was filed on August 21, 2018, and Maher has filed numerous motions and documents since that time. In none of those other documents did he ask for a subpoena to obtain his medical records. Granting that request at this time will cause significant additional delay, as it will take considerable time for the Court to send Maher the subpoena forms, for him to return them to the Court for the U.S. Marshal to serve the subpoenas or for him to find some other person to serve them, and then for the receiving entities to either comply or object to the subpoenas. The Court will not further postpone a ruling on Defendants' motion for summary judgment to accommodate Maher's neglect. Therefore, his requests for subpoenas is DENIED.

*Defendants' Motion for Summary Judgment*

Maher's response to Defendants' motion for summary judgment was due within thirty-one days after service of the motion. *See* Local Rule 56.1(b); *see also* Fed. R. Civ. P. 6(d) (allowing three additional days if service is made by mail). He appears to have mailed four separate responses within that time period which the Court will consider. (ECF Nos. 98, 100, 101 & 105.) However, Maher filed two other responses that were untimely and will not be considered. (ECF Nos. 108 & 109.) Defendants filed a reply to Maher's timely responses. (ECF No. 104.)

The Court set out Maher's claims in the order of partial dismissal:

> Maher alleges that he has needed surgery on his left leg, ankle, right arm, and shoulder since he arrived at HCCF on March 25, 2016, where he has been

> treated by Defendant Dietz beginning on April 8, 2016. (ECF No. 1 at PageID 3; *see also* ECF Nos. 5 & 6 (Grievances).) Maher contends that he has very little movement in his right shoulder and arm. (ECF No. 1 at PageID 3.) He states that he is restricted to no lifting, no climbing up and down steps, and no activities with his right arm and shoulder. (*Id.*) Maher alleges the Defendant Dietz told him that his injuries will not be repaired unless they are life threatening even though Maher is using a cane, can only walk on flat surfaces, cannot do any exercises, and is designated as Class C medical, which Maher alleges is the "worst you can be. . . ." (*Id.* at PageID 4.) Maher has written ten grievances, but he alleges he has received no help from the State of Tennessee, HCCF, or Defendants Borden, Dietz and Perry. (*Id.* at PageID 5.)
>
> Maher alleges that he has seen several nurses over seven months, but they have told him they cannot do more without Defendant Dietz taking action. (*Id.* at PageID 7.) He contends that he is now seeing Dr. Kirk, who is not a party to this complaint, about his mental health because the lack of medical treatment is leaving him physically and mentally drained. (*Id.*)
>
> . . . .
>
> Maher contends that he was told by his orthopedic specialist, Dr. Ramashad, that he needed surgeries to repair the injuries; however, Defendant Dietz stated that Maher did not need the surgeries at that time. (*Id.* at PageID 9.) Maher argues that Dietz, a general practi[ti]oner, is not qualified to make that determination; has only provided Maher with a brace to ease the pain and discomfort; and will not agree to the surgeries because the injuries did not occur at the HCCF. (*Id.*) Maher was given a cane because of damage to his knee and ankle and a brace for his arm; however, he contends the cane and brace were merely temporary fixes. (*Id.* at PageID 10.) Mather alleges he also was promised an ankle brace; however, Defendant Dietz has told him that the cane would suffice. (ECF Nos. 16 & 21.) Maher contends that if surgery was done to remove shrapnel he could walk normally without the use of a cane. (*Id.* at PageID 11.) Maher also contends that he has carpal tunnel syndrome and a torn rotator cuff in his right arm and shoulder that need to be repaired in order for him to have 100% use of the arm. (*Id.* at PageID 11-12.)

(ECF No. 47 at PageID 299-301.)

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of

evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[2] or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Rule 56(e) then provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may take any of the following actions:

> (1) give an opportunity to properly support or address the fact;

> (2) consider the fact undisputed for purposes of the motion;

> (3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it; or

> (4) issue any other appropriate order.

In *Celotex Corp.*, the Supreme Court explained that Rule 56:

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because

---

[2] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

6

> the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. However, where the party moving for summary judgment also has the burden of persuasion at trial, the initial burden on summary judgment is higher. Under those circumstances, the moving party must show "that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (internal quotation marks omitted).

In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In support of their motion for summary judgment, Defendants have submitted the Declaration of Defendant Borden, which includes authenticated copies of Maher's medical records from his time at the HCCF, (Borden Decl., ECF Nos. 94-3 & 94-4); the Declaration of Defendant Dietz, (Dietz Decl., ECF No. 94-5); the Declaration of Rebecca Wilson, the HCCF Grievance Chairperson, which includes authenticated copies of the grievances filed by Maher during his time at the HCCF, (Wilson Decl., ECF No. 94-6), and a copy of Maher's response to Defendants' Interrogatory Number 13, (ECF No. 94-7).

Maher's responses to the motion for summary judgment, of which all but one is "signed pursuant to penalties of perjury 28 U.S.C. 1746," consist mainly of argument that attempts to refute the Defendants' arguments and statement of undisputed facts. Nevertheless, the Court will attempt to glean from his responses any statements of fact that are relevant and material and that are made on personal knowledge. The Court notes, however, that the medical records attached to Document 105 are not authenticated and are thus inadmissible.[3]

Defendants first contend that Maher failed to exhaust his administrative remedies with regard to most of the claims brought in this action.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."). However, a prisoner is not required to demonstrate exhaustion in his complaint. *Jones*, 549 U.S. at 216. Failure to exhaust is an affirmative defense on which the defendant has the burden of proof. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011); *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

Section 1997e(a) requires not merely exhaustion of the available administrative remedies, but *proper exhaustion* of those remedies, meaning that a prisoner must comply with the institution's "critical procedural rules," such as time limits for filing grievances. *Woodford v. Ngo*,

---

[3] Even if the records were admissible, their relevance is questionable because they are records from 2015, prior to his incarceration at the HCCF and treatment by Defendant Dietz.

548 U.S. 81 (2006). The Sixth Circuit requires prisoners "to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher*, 639 F.3d at 240 (quoting *Napier*, 636 F.3d at 224). "[I]f the plaintiff contends he was prevented from exhausting his remedies . . . the defendant [must] present evidence showing that the plaintiff's ability to exhaust was not hindered." *Surles*, 678 F.3d at 458 n.10.

The Grievance Chairperson, Rebecca Wilson, avers in her Declaration that HCCF keeps records of all properly filed inmate grievances and that records of those grievances also are kept in the Tennessee Offender Management Information System (TOMIS), the computerized database of the Tennessee Department of Correction (TDOC). (Wilson Decl. ¶ 11, ECF No. 94-6 at PageID 876.) Wilson's review of TOMIS showed that Maher filed seven grievances at the HCCF before filing this case, each of which complained about a lack of adequate medical care. (*Id.* ¶ 12 at PageID 877.) Maher referenced Defendant Dietz in some of those grievances, but he did not name or even mention Defendant Borden in any of the grievances. (*Id.* Ex. A at PageID 882-905.)

Wilson states that in the first grievance submitted by Maher, grievance number 29065/302930, filed on June 15, 2016, he complained of chronic pain and numbness in his left knee and ankle that left him unable to walk on many surfaces; he stated his leg regularly "gave out" on him. (*Id.* ¶ 13 at PageID 877 & Ex. A at PageID 883-84.) Maher also complained he had submitted numerous forms to the medical department and to "the nurse" and Defendant Dietz asking for help. He requested that he be given surgery on his knee and ankle. (*Id.* Ex. A at PageID 883.)[4] Maher appealed that first grievance through all administrative levels to the Office of the

---

[4] Maher also stated in the grievance that his right arm was too weak to hold his weight, but without any further elaboration. He did not assert in that particular grievance that he needed surgery on his arm or that it was not being adequately treated. (*Id.* at PageID 884.)

9

TDOC Commissioner, and it was denied at every level. (*Id.* ¶ 12 at PageID 877 & Ex. A at PageID 882, 885-87.) Thus, he has exhausted his administrative remedies with regard to his claims against Defendant Dietz concerning the request for surgery on his left knee and ankle.

Wilson also states in her Declaration that three of Maher's later grievances referred to Defendant Dietz and complained about Maher's pain and need for surgery on his right arm and shoulder. (*Id.* ¶¶ 15, 17 & 19 at PageID 878-79 & Ex. A at PageID 892-93, 898-99, & 904-05.) In two other grievances, Maher again complained about his knee and ankle problems and need for surgery but did not specifically refer to Dr. Dietz. (*Id.* ¶¶ 16 & 18 at PageID 878 & Ex. A at PageID 895-96 & 901-02.)[5] Maher did not appeal any of the later grievances beyond the initial denial by the supervisor. (*Id.* ¶¶ 14-19 at PageID 877-79.)

Maher does not dispute that he fully exhausted only the first grievance that he filed. In his responses to summary judgment, his only statement regarding the exhaustion issue is that, "[a]ny gr[ie]vance filed upon medical issues is automatically deemed inappropriate because the gr[ie]vance committee specifys [sic] that a diagnosis is not gr[ie]vable." (ECF No. 98 at PageID 925.) The Court will treat this assertion as an argument that deeming a medical diagnosis inappropriate renders the administrative remedy "unavailable" under 42 U.S.C. § 1997e(a).

In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court stated that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Court identified three ways in which an administrative remedy would not be "available" to obtain relief.

---

[5] In yet another grievance, Maher complained about problems with acid reflux and referred to Dr. Dietz. (*Id.* ¶ 14 at PageID 877-78 & Ex. A at PageID 889-90.) Maher's treatment for acid reflux is not at issue in this case.

10

> First ... when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates....
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it....
>
> And finally, ... when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation....

136 S. Ct. at 1859-60.

According to Wilson's Declaration, deeming the subject matter of a grievance inappropriate for the grievance process under TDOC policy does not prevent an inmate from continuing with that process. Instead, if the grievance chairperson determines that a matter is non-grievable, the inmate may appeal that decision itself. (Wilson Decl. ¶ 9, ECF No. 94-6 at PageID 876.) In addition, Maher's actual experience shows that the TDOC grievance procedure was not unavailable to him just because he filed a medical grievance. Here, the supervisor (the HSA at the time) gave Maher a considered, substantive response to his first medical grievance, (*id.* Ex. A at PageID 886-87), and Maher appealed that response through each administrative level. Neither the Grievance Committee, the Warden, nor the Commissioner's Office deemed that medical grievance inappropriate. (*Id.* at PageID 882-85.)

It is evident that all TDOC medical grievances do not "operate as a simple dead end," so the decision in *Ross* does not require this Court to find that Maher's failure to exhaust administrative remedies should be excused. TDOC policy is not always used to categorically deny medical grievances as inappropriate to the grievance process without any consideration, and even if a grievance is denied as inappropriate, that decision also can be appealed. Therefore, the grievance process is "available" for medical grievances under 28 U.S.C. § 1997e(a).

Because Maher did not name Defendant Borden in any of his grievances, Borden is entitled to judgment as a matter of law on all claims brought against him in this matter. In addition, Maher's failure to exhaust any grievance naming Defendant Dietz other than the first one entitles Dietz to judgment as a matter of law on all claims brought against him except for the claim that he refused to approve Maher for surgery on his left knee and ankle.

With regard to the claim concerning Maher's left knee and ankle, Defendant Dietz contends the undisputed evidence in the record shows he did not violate Maher's right to adequate medical care. "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (same). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Johnson*, 398 F.3d at 874 (internal quotation marks and citation omitted).

The objective component of an Eighth Amendment claim requires that a prisoner have a serious medical need. *Blackmore*, 390 F.3d at 895; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); *see also Santiago,* 734 F.3d at 590 (same); *Johnson*, 398 F.3d at 874 (same).

Defendants assert that Maher cannot establish the objective component of an Eighth Amendment violation because he has not presented admissible expert medical proof showing that the surgeries he sought were medically necessary. However, because Maher has failed to establish the subjective component of his claim the Court will presume, for purposes of this motion only, that he can establish the objective component of an Eighth Amendment violation.

The subjective component of an Eighth Amendment claim requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he or she had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). The plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence," *Farmer*, 511 U.S. at 835, so that not every medical malpractice claim rises to the level of an Eighth Amendment violation:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle v. Gamble,* 429 U.S. 97, 105-05 (1976). Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . An act or omission*

> unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the [Constitution].").

Defendant Dietz states in his Declaration that he evaluated and treated Maher on several occasions at the HCCF for numerous medical conditions, both in the chronic disease clinic and the medical department; those conditions included Maher's problems with his left knee and ankle. (Dietz Decl. ¶¶ 5-6, ECF No. 94-5 at PageID 869.) Dietz also states that he conducted medical reviews of Maher's treatment records. (*Id.* ¶ 7.)

Maher's medical records show his left knee and left ankle were x-rayed on January 9, 2017. The radiology report for his knee noted "[s]urgical hardware in the proximal tibia and fibula with normal alignment. No fracture is seen. Joint spaces are normal. No effusion. No incidental findings." The impression was "[n]o acute pathology." (Borden Decl. Ex. A at PageID 588; Dietz Decl. ¶ 11 at PageID 870.) As to Maher's ankle, the report noted "[s]urgical hardware in the distal tibia and fibula with normal alignment and healed fractures. Posttraumatic radiopaque foreign bodies noted around the distal tibia. Old avulsion fracture of the medial Malley LS. Joint space is preserved. No other osseous or soft tissue pathology." Again the impression was "[n]o acute pathology." (Borden Decl. Ex. A at PageID 588; Dietz Decl. ¶ 12 at PageID 871.) Dr. Dietz states he reviewed the x-ray results the next day. (Dietz Decl. ¶¶ 11-12 at PageID 870-71.)

Dietz avers that, based on a reasonable degree of medical certainty and relying upon his "experience, training, knowledge, and practice, as well as upon my personal evaluations and treatment of Plaintiff and my review of Plaintiff's medical records," he does not believe it was medically necessary for Maher to undergo knee or ankle surgery at any time while he was at the HCCF. (*Id.* ¶¶ 17-18 & 23 at PageID 871-73.) He states that in accordance with his medical judgment of what Maher needed, he gave Maher the best treatment available. Dietz further avers that his treatment of Maher was adequate and reasonable and met the community standard of medical care in a correctional setting. (*Id.* ¶ 21 at PageID 872.) He asserts that he acted in good faith and did not ignore or disregard Maher's medical needs of which he was aware or intentionally deny him appropriate care and treatment. (*Id.* ¶ 22, PageID 873.)

In his responses to summary judgment, Maher continues to assert he did not receive any treatment for his knee and ankle, but he concedes that his injuries were monitored and that he was given pain medication, though not the narcotics he preferred and had been taking prior to incarceration. However, he asserts Dietz should have ordered further diagnostic testing, specifically an MRI, and provided him with the surgery he requested. (ECF No. 98 at PageID 925-26; ECF No. 100 at PageID 936; ECF No. 101 at PageID 943-44; ECF No. 105 at .)[6]

Maher does not contend that he has any medical training. His own subjective belief that surgery was the only appropriate course of treatment for his left knee and ankle is not sufficient to create a genuine issue of material fact in light of Defendant Dietz's averments that he did not, in his best medical judgment, believe the surgery requested by Maher was medically necessary. Even

---

[6] Much of Maher's affidavit, Document #101, consists of demands to know what treatment he is receiving and where are the medical charts referred to in Dietz's Declaration (the charts ARE Maher's medical records), assertions that Dietz is not qualified to assess his injuries because he is not a specialist, and repeated claims that Dietz's averments in his Declaration are false. There are few relevant material facts included.

if that judgment was wrong or negligent, it does not amount to the deliberate indifference required for an Eighth Amendment violation. The Court therefore finds that Defendant Dietz also is entitled to judgment as a matter of law.

For all of the foregoing reasons, Defendants' motion for summary judgment is GRANTED. (ECF No. 94.) All other pending motions are DENIED.

For the same reasons leading the Court to grant summary judgment, the Court also CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rule of Appellate Procedure 24(a), that an appeal by Maher in this case would not be taken in good faith. If Maher nevertheless chooses to appeal and wishes to take advantage of the installment procedures for paying the $505 appellate filing fee, he must comply with the procedures set out in 28 U.S.C. § 1915(a)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013), by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                       s/ **James D. Todd**
                                       JAMES D. TODD
                                       UNITED STATES DISTRICT JUDGE